UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION
CASE NO.: 3:16-CV-00015-rv-CJK

CHARLES LITTON MORRIS,

    Plaintiff,

vs.

OFFICER DERRICK JOHNSON,
OFFICER KENDAL MAY, OFFICE
DANIEL LUCANTE, CORIZON, LLC,
UNKNOWN CORRECTIONAL
OFFICERS OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,

    Defendants.
_____/

## DEFENDANT CORIZON, LLC'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Corizon, LLC ("Corizon"), pursuant to Federal Rule of Civil Procedure 56 and rule 56.1, Local Rules of the United States District Court for the Northern District of Florida file its Motion for Summary Judgment as follows:

## MOTION

1. Plaintiff Charles Litton Morris ("Morris"), filed suit in this District, bringing a prisoner civil rights medical claim against Corizon.

2. The record evidence does not support the claim.

3. Therefore, Corizon is entitled to summary judgment.

## MEMORANDUM OF LAW

**I.     BACKGROUND**

Morris was a prisoner of the Florida Department of Corrections, who was released on November 15, 2015 [ECF #20, ¶9].  He claims he was beaten by corrections officers on January 11, 2014, and he sought medical care three days later.  An unidentified nurse examined him, but did not provide treatment for unidentified injuries.  He was then taken to confinement, apparently for disciplinary reasons.  At some point during his 56-day confinement, he was seen by a different nurse, who told Morris an x-ray would be performed for his "broken ribs," a condition which was apparently self-diagnosed.  The x-ray was allegedly never done [ECF #20, ¶4].

Morris also claims he was beaten by guards on May 15, 2014.  Prior to this attack, he claims he was given a pre-confinement physical by another nurse, who noted a high blood pressure.  Morris allegedly told the nurse it was high because he was "about to be killed."  The nurse told him that he would be "fine."  At some unknown time, corrections officers allegedly beat Morris.  He was seen by a nurse, who closed a wound using surgical glue [ECF #20, ¶5].

Following the decision on Corizon's dismissal motion, this case is focused on one issue: that Corizon "would not allow medical staff to do what was medically, ethically and legally necessary and required concerning plaintiff

injuries, the worst of which being an inguinal hernia" [ECF #20, ¶9]. To that end, the affidavit of Christy Davis, the advanced registered nurse practitioner who provided most of the care for the hernia, and pertinent medical records have been filed. According to Ms. Davis, the hernia was stable, small, easily reducible and did not involve bowel herniation. Those types of hernias are not treated with surgery, but with a hernia belt, which Morris did not always use, and pain medications. If Ms. Davis thought surgery was appropriate, she "would have requested that he be seen by a specialist at the Regional Medical Center" and "there was nothing preventing [her] from making this request." The only time surgery was contemplated was at the suggestion of the physician in July 2015, but Morris "declined"[ECF #144-1].

The medical records support Ms. Davis' findings:

June 30, 2014—Morris did not appear for sick call, but two days later, Ms. Davis examined him, concluding, "[n]o TX (treatment) indicated at present for small inguinal hernia" [ECF #144-2, Pg. 1];

July 11, 2014—Abdominal Pain Protocol—Ms. Davis ordered pain medications and a hernia belt [ECF #144-2, Pg. 2];

July 31, 2014—Morris states that "my hernia isn't bothering me so bad," and he is not wearing the hernia belt. Ms. Davis finds the hernia "small" and

"reducible"  She considers it "stable," and continues the treatment plan [ECF #144-2, Pg. 3];

October 22, 2014 and November 13, 2014—Morris failed to appear for sick call [ECF #144-2, Pg. 3];

December 8, 2014—Morris complains nursing staff told him he won't get surgery because of time left on his sentence, and that he has not been seen by a physician after "numerous" sick calls."  He is reminded that he was seen by a practitioner on July 31, 2014; he had no issues; and he only sent one sick call request, on December 3, 2014 [ECF #144-2, Pgs. 4-5];

2015-2016—Morris was given passes for a hernia belt and no lifting [ECF #144-2, Pgs. 15-19] throughout this period;

January 15, 2015—Morris claims he isn't being treated because he doesn't have enough time on his sentence.  He was informed that not all hernias require surgery.  He was seen and Ms. Davis ordered 400 mg. Ibuprofen for 90 days [ECF #144-2, Pgs. 6-8];

January 23, 2015—Morris was seen by Ms. Davis—he was not using the hernia belt.  She renewed his no-lifting and hernia belt passes and orders 400 mg. Ibuprofen for 180 days [ECF #144-2, Pgs. 9-10];

February 10, 2015—Morris was seen by a physician, who found the hernia reducible, but becoming more difficult."  Morris was using the belt incorrectly, and

he was educated on use of the hernia belt and "consideration for surgical intervention." [ECF #144-2, Pg. 11];

March 16, 2015—Morris was seen by a physician. The hernia was reducible, an ultrasound was ordered and he was given a new hernia belt [ECF #144-2, Pg. 12];

April 16, 2015—the ultrasound identified no bowel herniation [ECF #144-2, Pg. 13];

May 19, 2015—Morris was seen by Dr. Ortiz. The hernia was stable; there no recommendation for surgery [ECF #144-2, Pg. 14];

June 7, 2015—Morris claims Dr. Ortiz wanted him to see a surgical specialist because it is getting bigger, but Dr. Ortiz made no such recommendation [ECF #144-2, Pg. 20];

July 9, 2015—seen by Dr. Ladele—"US (ultrasound) notes no bowel herniation." "Strongly consider GI c/s (consultation). PT. (patient) would like to wait for next step in management 2º to legal matters." Mobic (a pain medication) was substituted for Ibuprofen [ECF #144-2, Pgs. 21-22].

August 3, 2015—Morris voices no complaints and Ms. Davis renews the hernia belt and no-lift passes [ECF #144-2, Pg. 23];

August 13, 2015—Morris files a grievance: he wants Ibuprofen, but doesn't mention surgery [ECF #144-2, Pgs. 24-25].

Morris was released from prison on November 15, 2015, and returned in September 2017.

## II. ARGUMENT

### A. Summary Judgment Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In 1986, the Supreme Court decided a trio of cases which encourage the use of summary judgment as a means to dispose of cases which are not factually or legally supported. *See Celotex Corp.*, 477 U.S. at 317; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The primary purpose of granting summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute, so if the evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment should be granted. *See Anderson*, 477 U.S. at 249-50.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Furthermore, once a moving party identifies those portions of the record showing the absence of a genuine issue of material fact, the party opposing summary judgment must set forth specific facts showing a genuine issue for trial and may not rely on mere allegations or denials. *See Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256-57. If the record as a whole could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue of fact precluding summary judgment. *See Matsushita*, 475 U.S. at 586. Where the record facts render the non-moving party's claim implausible, the non-moving party must come up with more persuasive evidence than would otherwise be necessary to defeat summary judgment. *Id.* at 587.

Evidence that is "merely colorable, or is not significantly probative" of a disputed fact, or a "mere scintilla of evidence" is not sufficient; there must be enough of a showing that the (trier of fact) could reasonably find for that party. *Anderson*, 477 U.S. 242; *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999); *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations, whether based on speculation or subjective beliefs, are insufficient to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564

n.6 (11th Cir. 1997) (holding that plaintiff's "conclusory assertions . . . , in the absence of (admissible) supporting evidence, are insufficient to withstand summary judgment"); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . . ").

### B. Corizon's Constitutional Liability

Because Corizon is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1997) (extending the application of *Monell* to private corporations performing traditional public functions); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (*en banc*) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation] is actually responsible"), *abrogated in part by Bell Atl. Corp.*, 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117

F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000); *see also Monell*, 436 U.S. 658. That is, "liability under §1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986).

The *Brown* Court also narrowed the test for causation when it stated:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the

municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404 (emphasis in original). A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

*Gold v. City of Miami*, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); *see also Brown*, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation. *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004). There, the plaintiff brought section 1983 claims against a Georgia county, claiming policies constituted and resulted in

deliberate indifference to his medical needs. Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In *McDowell*, an inmate was seen and treated for back pain at a local hospital on June 5, 1997. At 9:30 the next night, he reported an inability to urinate and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to the hospital. But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first. The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy. Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed emergent; and he was taken to the hospital by ambulance. A spinal abscess was diagnosed, and surgery was performed. After surgery, McDowell was an incomplete paraplegic. *See McDowell at 1286-87*.

*McDowell* arrived at the 11th Circuit after the district court granted summary judgment to the county. The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation. *Id.* at 1289 (citing *Monell*, 436 U.S. at 692).

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " *McDowell*, 392 F.3d at 1290 (quoting *Bd. of County Com'rs v. Brown*, 520 U.S. 397, 403-04 (1997)). That identification "prevents the imposition of liability based upon an isolated incident." *Id.* "Rather, the incident must result from a demonstrated practice." *Id.* The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." *Id.*

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." *Id.* Therefore, the court determined this occurrence was an "isolated incident" rather than a "persistent" or "widespread" policy. *Id.* at 1290-91.

Next, the *McDowell* court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences.'" *Id.* at 1291 (citing *Davis ex rel. Doe v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000)). The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant

inability to transport." Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail. *Id.*

Relying on the Supreme Court's decision in *Brown*, the *McDowell* court found that in a case "where the plaintiff claims that a municipality's facially valid actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.'" *Id.* (quoting *Brown*, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Brown*, 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original). For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " *McDowell*, 392 F.3d at 1291 (quoting *Brown*, 520 U.S. at 407). A "showing of simple or even heightened negligence is not enough." *Id.* (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit. The court determined there was no evidence the governing body knew of any potential medical concerns caused by its decision, and found the policy to be sound. *Id.* (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation").

McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." *Id.* at 1292. Thus, the court found the alleged constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail. *Id.*

The court then considered causation. The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury. *Id.* The court recognized the Supreme Court's caveat in *Brown* that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* (quoting *Brown*, 520 U.S. at 410). To "test the link" between the injury and the County's conduct, the *McDowell* court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious consequence' of that decision." *Id.* (stating that "[w]hile it may be true that the Board's budget decision would make a violation of his constitutional rights 'more likely,' that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . . produced a specific constitutional allegation)(quoting *Brown* at 411). Again, relying on *Brown*, the court went on to state that "liability must be premised on a finding that "*this*" budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered." *Id.* at 1292 (quoting *Brown* at

411) (emphasis in original).  The *McDowell* court stated:

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing. Additionally, McDowell did not demonstrate that the County was the moving force behind his injury, given that the Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable. Finally, the record indicates that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before. To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.

*Id.* at 1292-93.

Morris has two methods to establish Corizon's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Corizon.  He must also show the policy was created with knowledge that his injury was a highly probable consequence of the policy's creation.

Interpreted broadly, Morris claims Corizon had a policy of not allowing employees to treat hernias in an appropriate manner, which to his mind is surgery. However, it is clear that he was provided with treatment: a hernia belt, which he did not always use or use properly, along with pain medications and passes. Nothing in this record supports the claim that physicians wanted to send him to a specialist, but could not because of a Corizon policy.  The record supports the opposite conclusion, as Dr. Ladele suggested just that in July 2015, but Morris

wanted to wait until he was released from prison. Ms. Davis never considered this a surgical case, even after Dr. Ladele made his suggestion, as the hernia was always small and reducible, and surgery carries risks. Additionally, Ms. Davis states that if she thought Morris needed surgery, even as late as August 2015 and after Morris declined Dr. Ladele's offer to send him to a specialist, she could have done so.

Morris was not sent to a specialist because none of the practitioners, employing their own medical judgment, believed it was necessary until Dr. Ladele suggested it in July 2015. Morris should have taken up that offer.

### III. CONCLUSION

For the foregoing reasons, Corizon is entitled to summary judgment in its favor.

### CERTIFICATE OF WORD LIMIT

Pursuant to Local Rule 7.1(F), this Motion contains 3,514 words.

By:   /s/ Gregg A. Toomey<br>
Gregg A. Toomey<br>
Florida Bar No. 159689

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of November, 2018, I filed the foregoing with the Clerk of the Court using the CM/ECF System, and will send a copy of the foregoing via U.S. Mail and/or electronically to the following:

Charles Litton Morris
DC# 223820
c/o Walton Correctional Institution
691 Institution Road
Defuniak Springs, FL 32433

Erich Messenger
*Attorneys for Defendants May and Lucante*
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
The Capital, PL-01
400 S. Monroe Street
Tallahassee, FL  32399-1050
Phone: 850.414.3300
Email:
erich.messenger@myfloridalegal.com

THE TOOMEY LAW FIRM LLC
*Attorneys for Defendant Corizon, LLC*
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL  33901
Phone:  239.337.1630
Fax:  239-337.0307
Email:  gat@thetoomeylawfirm.com, alr@thetoomeylawfirm.com, and hms@thetoomeylawfirm.com

By:   /s/ Gregg A. Toomey
          Gregg A. Toomey
          Florida Bar No. 159689