UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES LITTON MORRIS,

     Plaintiff,

v.                                Case No. 3:16cv15-RV-HTC

OFFICER DERRIC JOHNSON, et al.,

     Defendants.

_____/

## ORDER and
## REPORT AND RECOMMENDATION

Plaintiff Charles Morris, proceeding *pro se* and *in forma pauperis*, sues Defendants under 42 U.S.C. § 1983 for allegedly violating his Eighth Amendment rights. ECF Doc. 20. Plaintiff alleges Defendant Corizon LLC ("Corizon") acted with deliberate indifference to his medical needs by failing to surgically repair his hernia. *Id*. Plaintiff alleges individual defendants, Derric Johnson, Daniel Lucante and Kendal May, used excessive force against him. *Id*.

Before the Court are Defendants' motions for summary judgment (ECF Docs. 144, 145, 156), Plaintiff's responses in opposition (ECF Docs. 160, 162) and Corizon's reply (ECF Docs. 165, 166). These motions have been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the parties'

submissions, the record and the relevant law, the undersigned recommends that Corizon's Motion for Summary Judgment (ECF Doc. 145) be GRANTED and Johnson, Lucante and May's Amended Motion for Summary Judgment (ECF Doc. 156) be DENIED.  Also before the Court are several motions related to the motions for summary judgment (ECF Docs. 161, 163, 169 and 171).

I.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the nonmoving party.  *Id.*  Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).  Generally, the Court must view the facts in the light most favorable to the non-moving party (here, Plaintiff) and draw all

reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

III.    Facts

Plaintiff's claims relate to events that occurred between January 11, 2014, and November 15, 2015, while he was in the custody of the Florida Department of Corrections ("FDOC") at Northwest Florida Reception Center ("NWFRC"). The facts pertinent to the resolution of Defendants' motions for summary judgment are drawn from Plaintiff's verified fourth amended complaint[1] (ECF Doc. 20), the evidence submitted by Defendants (ECF Docs. 144, 156-1 – 156-6) and the evidence submitted by Plaintiff (ECF Doc. 160-2). Nevertheless, matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

A.    Plaintiff's Evidence

At approximately 9:30 p.m. on January 11, 2014, Plaintiff was called from his dormitory to the officer's station at NWFRC. ECF Doc. 20, p. 4. An unknown officer handcuffed Plaintiff and escorted him to the center gate area. *Id.* There, Officer Johnson grabbed Plaintiff and punched him in the "left rib-cage area" five

---

[1] *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and . . . a separate affidavit is not necessary."); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).

(5) times. *Id.* Plaintiff says the punches broke his ribs and caused "severe swelling and bruising to Plaintiff's left shoulder/rib-cage area." *Id.* Plaintiff "was returned to his dorm" and "told not to tell anyone of the attack or they could come back and do it again." *Id.*, p. 5.

Plaintiff waited until January 14, 2014, to report the January 11 incident to NWFRC staff due to fear of retaliation. *Id.* An unknown nurse "briefly looked at Plaintiff with no treatment provided." *Id.*, p. 5-6. Captain Burdeshaw placed Plaintiff in confinement for fifty-six (56) days "to conceal the healing process of Plaintiff's injuries." *Id.*, p. 6. While in confinement, Nurse Davis "came to look at Plaintiff and said that x-rays would be taken for Plaintiff's broken ribs, but none were ever taken." *Id.* Only Defendant Johnson was involved in the January 2014 incident.

The primary basis of Plaintiff's excessive force claim arises out of an incident that occurred on May 15, 2014. ECF Doc. 162, p. 9. On that day, Officers Johnson and Maples entered the NWRFC law library and ordered Plaintiff to walk outside. ECF Doc. 20, p. 6. The officers handcuffed Plaintiff and escorted him to the medical department for a pre-confinement physical. *Id.*, p. 7. Nurse Lucas checked Plaintiff's vital signs and stated, "my God, your blood pressure is high." *Id.* Plaintiff responded, "I'm about to be killed," but Lucas told him "oh, you'll be fine." *Id.*

Plaintiff "was taken to confinement and placed there under a bogus 'disorderly conduct' charge." *Id.*

Officers Johnson, Lucante, May and three (3) unknown officers then "picked Plaintiff up [and carried] him horizontally to a back room where they threw [him] to the concrete floor." *Id.* The officers "began to kick and stomp Plaintiff all over his body, especially around his mid-section/abdomen/shoulders/chest/rib-cage areas, repeatedly and seemingly endlessly." *Id.* In addition, Lucante stomped on Plaintiff's testicles; an unknown officer stomped on the back of Plaintiff's head, "smashing his face into the concrete floor" and causing a laceration above his left eye. *Id.*, p. 8. After Plaintiff was placed in a shower stall, Lucante sprayed chemical agents into the laceration. *Id.* Nurse Lucas subsequently glued the wound shut. *Id.* Plaintiff "was placed in a confinement cell feeling the effects of severe confusion, room/head spinning." *Id.* An hour later, Sergeant Pope photographed the head wound. *Id.* Plaintiff "remained in confinement for 16 days deprived of meals by Officer May" until being released around June 1, 2014. *Id.*

After his release from confinement, Plaintiff "began feeling abdominal pain similar to the pain felt when his testicles had been stomped on by Officer Lucante." *Id.*, p. 10. Plaintiff "then sought medical care when he learned that he had suffered a (inguinal) hernia." *Id.*, p. 11. "This diagnosis was confirmed by inmate Dr. William N. Taylor, M.D." *Id.* "[F]rom the beginning of June 2014 [through]

Plaintiff's November 15, 2015, release from prison[,] Plaintiff repeatedly sought the required/necessary medical surgery to repair his inguinal hernia, advising Corizon medical staff that the pain, size, symptoms, and degeneration of his hernia was gradually getting worse . . . ." *Id.* "The entire time, Drs. Ladele and Ortiz said that all they were allowed to do was prescribe ibuprofen, gas medication, and issue a hernia belt." *Id.*, p. 12. Drs. Ladele and Ortiz also said "Corizon was not going to pay to fix the hernia because Plaintiff did not have enough time left on his sentence . . . ." *Id.* "Nursing staff made additional comments like, 'get it fixed when you get out at your own expense, or through your county health department, or through Obamacare.'" *Id.*

After Plaintiff's November 15, 2015, release from the FDOC, a vocational rehabilitation program referred him to Dr. Ludovic Lasquety. *Id.*, p. 12-13. Dr. Lasquety examined Plaintiff's abdomen on February 25, 2016, and noted "an obvious left inguinal hernia which is reducible." ECF Doc. 160-2, p. 32. Dr. Lasquety "discussed methods of repair" and Plaintiff preferred "a laparoscopic approach." *Id.* Dr. Lasquety noted "surgery is recommended to repair the left inguinal hernia with mesh." *Id.* On July 25, 2016, Dr. Lasquety scheduled the surgery for September 12, 2016. *Id.*, p. 35.

B.     Defendant Corizon's Evidence

Corizon was contracted to provide health care services for inmates at NWFRC. Plaintiff was treated primarily by Corizon employees, Nurse Christy Davis and Drs. Ladele and Ortiz. Plaintiff's medical and grievance records indicate the following. On June 30 and July 2 of 2014, Plaintiff was a "no show" for sick call. ECF Doc. 144-2, p. 1. Later, on July 2, however, Nurse Davis examined Plaintiff and concluded "no [treatment] indicated [at] present for small inguinal hernia." *Id*. Plaintiff was seen in sick call again on July 4, 2014, with complaints about the hernia. *Id*. Nurse Lucas referred him to "MD/ARNP call out" for further evaluation. *Id*. Nurse Davis ordered ibuprofen and a hernia belt on July 11. *Id.*, p. 2.

On July 31, 2014, Plaintiff was not wearing the hernia belt, but stated "my hernia isn't bothering me as bad now since I have a job change out of the kitchen." *Id.*, p. 3. Nurse Davis continued Plaintiff's treatment plan after examining him and concluding he had a stable, small, reducible inguinal hernia. *Id*. Plaintiff failed to appear for sick call on October 22 and November 13. *Id*.

On January 15, 2015, Plaintiff submitted an informal grievance which alleged that "FDOC/Corizon" refused to provide adequate medical treatment because Plaintiff did not have "enough time left on [his] sentence." *Id.*, p. 6-7. The grievance was denied; Plaintiff was advised that a hernia "does not automatically require

surgery" and his "chart [was] under review by [a] clinician." *Id.*, p. 6.  Also, on January 15, Nurse Davis ordered an additional ninety (90) days' worth of ibuprofen and Zantac. *Id.*, p. 8.

On January 23, 2015, Plaintiff reported his hernia "bother[ed]" him and he was not wearing the hernia belt. *Id.*, p. 9.  Nurse Davis provided Plaintiff a low-bunk pass, a pass for a hernia belt, and a pass that restricted Plaintiff to lifting/pushing/pulling no more than ten (10) pounds.[2]  *Id.*  Davis also extended the order of ibuprofen by 180 days. *Id.*, p. 10.

On March 16, 2015, Plaintiff reported "persistent pain mostly [with] ambulation," but no pain when at rest. *Id.*, p. 12.  He said the pain was "worse [with] eating beans [and] other foods like cabbage." *Id.*  An examination showed the hernia was reducible and stable.  *Id.*  Dr. Ladele and Nurse Tharp ordered an ultrasound, replaced Plaintiff's extra-large hernia belt with a medium one, and continued the ibuprofen.  *Id.*  The April 16, 2015, ultrasound revealed no evidence of bowel herniation. *Id.*, p. 13.98

On May 19, 2015, Plaintiff informed Dr. Ortiz that his hernia caused pain when standing and ambulating but rest relieved it. *Id.*, p. 14.  Dr. Ortiz examined Plaintiff and found the hernia was reducible and stable. *Id.*  Dr. Ortiz scheduled a

---

[2] Plaintiff maintained these passes until his discharge from the FDOC in November 2015.  ECF Doc. 144-2, p. 15-16.

follow-up in eight weeks.  *Id.*  On June 7, 2015, however, Plaintiff submitted an inmate request asserting Dr. Ortiz said Plaintiff would be scheduled to see a surgical specialist.  *Id.*, p. 20.  Plaintiff stated his hernia continued "to get worse as to size, symptoms, and pain."  *Id.*  The response noted "[t]here is nothing in your chart about seeing a specialist."  *Id.*

Dr. Ladele examined Plaintiff on July 9, 2015, noting the April ultrasound revealed no bowel herniation, and Plaintiff reported his pain was unchanged.  *Id.*, p. 21.  Dr. Ladele recommended that Plaintiff "strongly consider [a gastrointestinal consultation]" for the hernia.  Ladele's notes, however, suggest that "[patient] would like to wait for next step in [management] 2° legal matters."  *Id.*  To treat Plaintiff's pain, Dr. Ladele substituted Mobic for ibuprofen.  *Id.*, p. 22.  Plaintiff visited the Chronic Illness Clinic on August 3, 2015, and Nurse Davis reported that Plaintiff voiced no complaints.  *Id.*, p. 23.

On August 13 and October 22 of 2015, Plaintiff submitted informal grievances to the medical department concerning the pain associated with his hernia. *Id.*, p. 24-26.  In the October 22 grievance, Plaintiff reported the nurse at sick call stated three (3) times that Plaintiff had only three (3) weeks till the end of his sentence.  *Id.*, p. 26.

Corizon submits an affidavit from Nurse Davis to support its motion.  ECF Doc. 144-1.  She "provided most of the care regarding [Plaintiff's] hernia condition."

*Id.*, p. 2.  Nurse Davis states surgery was not indicated for the hernia because it was small, easily reducible and stable, with no evidence of bowel herniation.  *Id.*  She states the appropriate treatment, pain medication and a hernia belt, was provided to Plaintiff, but he often did not use the belt and missed sick call requests he made.  *Id.*  If Nurse Davis thought surgery was appropriate, nothing prevented her from requesting that Plaintiff be seen by a specialist at the Regional Medical Center.  *Id.*

C.     Defendants Johnson, Lucante and May's Evidence

The Individual Defendants rely upon an FDOC Office of the Inspector General ("OIG") Inquiry Summary Report and an Incident Report relating to the January 2014 incident.  ECF Docs. 156-4, 156-5.  Both Reports describe Plaintiff's allegations of being taken to the center gate and punched on the left side of his torso.  The Inquiry Summary Report indicates the OIG interviewed Officer Grissett, the individual who Plaintiff claimed called him to the laundry room before the escort to the center gate.  ECF Doc. 156-4, p. 2.  Officer Grissett denied calling Plaintiff to the laundry room or seeing any inmates in that area at the time Plaintiff alleged.  *Id.*  The OIG notes there were no witnesses to the assault and no video capability in the area of the alleged assault.  *Id.*  Based on a lack of supporting information, the OIG closed the inquiry without action.  *Id.*, p. 3.

With respect to the May 15, 2014, allegations, the Individual Defendants rely on a declaration from Lucante, which indicates the following.  ECF Doc. 156-1.  On

May 15, 2014, at approximately 2:00 p.m., Lucante was conducting a security check and observed Plaintiff banging his head on his cell wall. *Id.*, p. 2. Lucante ordered Plaintiff to stop his self-injurious behavior and submit to hand restraints, but Plaintiff refused to comply. *Id.* To stop Plaintiff from injuring himself further, Lucante sprayed Plaintiff with three (3) one-second bursts of chemical agents. *Id.* After application of the chemical agents, Plaintiff began to comply with Lucante's orders. *Id.*, p. 3. Plaintiff then received a medical examination and cool water shower, and he was placed in a cell for observation. *Id.* Lucante denies that Plaintiff was taken into a room and subjected to excessive force. *Id.*

The Individual Defendants also submit a Report of Force Used form, a Warden's Summary form and an Incident Report which are consistent with Lucante's description of events. ECF Doc. 156-2. They also rely on an FDOC OIG Inquiry Summary Report. ECF Doc. 156-3. The Inquiry Summary Report indicates an anonymous inmate made a "TIP call" and alleged Plaintiff was beaten by unidentified officers and needed medical assistance. *Id.*, p. 2. The caller also claimed the OIG needed to investigate and Plaintiff's life was in danger. *Id.* The OIG closed the inquiry and concluded no further action was warranted based on Lucante's reported use of force. *Id.* Lastly, Defendants rely on a photograph that shows Plaintiff with a bandaged injury above his left eye. ECF Doc. 156-6.

## IV.    Discussion

### A.    Preliminary Matters

Plaintiff and Defendant Corizon filed several motions related to the pending motions for summary judgment. First, Plaintiff moves for permission to exceed the 30-page limit for his response to the Individual Defendants' Amended Motion for Summary Judgment. ECF Doc. 161. Plaintiff's motion was not opposed and his response (ECF Doc. 162) exceeded the page limit by only one page. Plaintiff's motion is granted. Plaintiff also moves for entry of handheld video evidence into the summary judgment record. ECF Doc. 163. The handheld video recorded the events *following* Lucante's use of chemical agents, including the escort of Plaintiff to a medical examination. *See* ECF Doc. 156-2, p. 5; ECF Doc. 162, p. 17-21. The parties do not contend the video captured the events forming the basis of Plaintiff's Eighth Amendment excessive force claim. Thus, the video evidence is not relevant to the Individual Defendants' motion for summary judgment. Plaintiff's motion is denied.

Defendant Corizon moves to strike Plaintiff's surreply (ECF Doc. 167) because he did not seek permission from the Court before filing it. ECF Doc. 169. Although the Northern District of Florida's Local Rules do not allow a party to file a surreply without prior permission from the Court, *see* N.D. Fla. Loc. R. 7.1, 56.1, the Court has discretion to allow a surreply. The Court will treat Plaintiff's response

to the motion to strike (ECF Doc. 171)[3] as a belated request for permission. Corizon's motion to strike is denied.

### B.    Corizon's Motion for Summary Judgment

"[T]o prevail on a civil rights action under § 1983, a Plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) ("Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration.").

To establish deliberate indifference, a plaintiff "must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Mann v. Taser Int'l, Inc.*, 588 F.3d at 1306-07.  A serious medical need is "one that, if left unattended, poses a substantial risk of serious harm."  *Id.* at 1307 (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).  For an actor to be found to have acted with

---

[3] ECF Doc. 171 is titled "Plaintiffs Motion to Strike Corizon's Doc. 169 Motion to Strike" but is really a response to Corizon's motion and was docketed as a response.

deliberate indifference to that need, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (quoting *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). For an actor to have subjective knowledge, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference requires more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Prison officials may avoid Eighth Amendment liability by showing, for example: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Based on the facts presented, a jury could not reasonably conclude that the medical treatment provided to Plaintiff violated the Eighth Amendment. While

Corizon and Plaintiff may dispute whether Plaintiff missed sick call appointments, wore his hernia belt as prescribed or made ongoing complaints about pain, the parties do not dispute Plaintiff was treated with pain medication, a hernia belt and restricted activity passes.  After medical staff diagnosed Plaintiff as suffering from a hernia, they examined him and monitored his condition, including performing an ultrasound which showed no bowel herniation.   Plaintiff's desire for a different, less conservative course of treatment, namely surgery, does not amount to deliberate indifference.  *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle*, 429 U.S. at 107); *Harris*, 941 F.2d at 1505 ("Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.") (citation omitted).

Indeed, the Eleventh Circuit has held that a decision to provide nonsurgical treatment for a reducible hernia does not constitute deliberate indifference.  In *Palazon v. Sec'y for Dep't of Corr.*, plaintiff McKenna "claimed that healthcare providers delayed in performing necessary surgery on the hernia and that this delay

caused him greater than necessary pain." 361 F. App'x 88, 89 (11th Cir. 2010). The

Eleventh Circuit noted:

> Evidence showed that McKenna received treatment for his hernia
> symptoms on many occasions. Among other things, he received a
> hernia truss, pain medication, and a wheelchair to help him move
> around. Medical records showed that McKenna saw doctors regularly
> and that his hernia remained reducible; and doctors did not want to
> operate on the hernia as long as it remained reducible. McKenna
> eventually did have surgery for his hernia.

*Id.* The Eleventh Circuit concluded "[a]ny delay in receiving surgery was because

the hernia remained treatable without surgery. That McKenna felt he should have

had surgery earlier than he did is insufficient to support a deliberate indifference

claim." *Id.*

*Palazon* demonstrates the provision of nonsurgical treatment for a reducible

hernia, like Plaintiff's, does not constitute deliberate indifference. *See Clark v.*

*Adams*, 233 F. App'x 400, 401 (5th Cir. 2007) (prisoner with bilateral hernias failed

to establish constitutional violation because "[t]he medical records show that Clark

was seen by medical personnel and was given medication and a truss. Clark's

allegations are best described as a disagreement with the medical treatment he has

received or, at most, allegations that Dr. Adams was negligent in failing to refer him

for surgery.").[4]

---

[4] Furthermore, the evidence submitted to the district court in *Palazon* showed McKenna
complained about his hernia for over two (2) years before receiving surgery, which is significantly

Moreover, Plaintiff presents no evidence his condition required surgery while he was at NWFRC.  No treating provider concluded before November 2015 that Plaintiff's hernia required surgery.  Nurse Davis states her medical judgment was the hernia could be treated without surgery.  ECF Doc. 144-1.  While Drs. Ortiz and Ladele considered referring Plaintiff to a specialist or gastrointestinal consultation, neither opined surgery was medically necessary.  ECF Doc. 144-2, p. 20-21. Additionally, there is no evidence that medical personnel failed to treat Plaintiff's complaints of pain or that the delay in surgical treatment rendered the hernia irreducible.  *See Hill v. DeKalb Reg'l Youth Detention Ctr.,* 40 F.3d 1176, 1186-87 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).  To the contrary, Dr. Lasquety, the physician Plaintiff saw after his November 2015 release from FDOC custody and upon whose opinion Plaintiff relies, confirmed the hernia remained reducible.  ECF Doc. 160-2, p. 32.  In fact, Dr. Lasquety did not schedule surgery until September 2016, even though Plaintiff's initial visit to him was in February 2016.  *Id.*, p. 35.  The timing of Dr. Lasquety's surgical recommendation, coming six (6) months after Plaintiff's initial visit and nine (9) months after he was treated at NWFRC, undercuts Plaintiff's claim.  If Dr. Lasquety did not believe Plaintiff's hernia required immediate surgical intervention in February 2016, it

---

longer than the period at issue in this case.  *See Palazon et al. v. Fla. Dep't of Corr.*, Case No. 2:05cv14224-KMM, ECF Docs. 145, 188 (S.D. Fla.).

cannot be said that Corizon's failure to provide surgery prior to November 2015—when the condition was less serious[5]—was "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness."[6] *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Seeking to impose corporate liability on Corizon for the conduct of Drs. Ladele and Ortiz and Nurse Davis, Plaintiff argues that Corizon had a custom or policy of denying surgery to inmates and points to comments he contends were made by Drs. Ladele and Ortiz that Corizon would not pay to fix his hernia because he did not have enough time left on his sentence. ECF Doc. 160, p. 4. "[T]o impose § 1983 liability on a [corporation], a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [corporation] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted).

As an initial matter, since the treatment Plaintiff received did not violate the Eighth Amendment, Corizon cannot be held liable for causing such a violation,

---

[5] Dr. Lasquety's February 25, 2016, treatment note states Plaintiff's hernia "is getting larger and more uncomfortable at this point," (ECF Doc. 160-2, p. 31) yet even at this point Lasquety did not believe immediate surgical treatment was required.

[6] Dr. Lasquety's opinion is further of limited benefit to Plaintiff because "what one medical profession[al] determines at a later point in time does not support a claim of deliberate indifference." *Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 917 (11th Cir. 2017) (citing *Harris*, 941 F.2d at 1505).

*regardless* of any custom or policy it may have.  *See also Ross*, 700 F. App'x at 917-18 ("[B]ecause Mr. Ross has not demonstrated that there was a constitutional violation in this case, by extension, he cannot establish that Corizon participated in or caused such a violation.") (citation omitted); *Monteleone v. Corizon*; 686 F. App'x 655, 661 (11th Cir. 2017) ("Mr. Monteleone's claim that Corizon's policies should have allowed for better treatment options like surgery, medical passes, boots, and physical therapy—was not cognizable under § 1983 because evidence of medical malpractice alone is not sufficient for a constitutional violation.   Mr. Monteleone has not demonstrated that there was a constitutional violation in this case, thus, he cannot establish that Corizon participated in or caused such a violation.") (citations omitted); *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008) ("Without an underlying violation of [a detainee's] constitutional rights, [a sheriff] cannot be liable in his individual or official capacity for a failure to train [a deputy] and [a county] cannot be liable on the ground that its policy caused a constitutional violation."); *Palermo v. Corr. Med. Servs. Inc.*, 133 F. Supp. 2d 1348, 1363 (S.D. Fla. 2001) ("It almost goes without saying that there can be no custom of deliberate indifference to a Plaintiff's Constitutional rights for those Plaintiffs who have not suffered a Constitutional tort.").

Moreover, corporate liability cannot attach because Plaintiff cannot show the alleged custom or policy (even if one existed) resulted in deliberate indifference to

his serious medical needs.  In other words, the comments made by Drs. Ladele and Ortiz do not show that the alleged custom or policy (versus, for example, the fact that it was not necessary at the time) was the "moving force" behind their decision to treat the hernia with continued observation, a hernia belt, passes and pain medication.  *See McDowell*, 392 F.3d at 1292 (holding that a plaintiff must prove causation by demonstrating that a municipality's deliberate conduct was the "moving force" behind his injury).  Indeed, Drs. Ladele and Ortiz's comments do not show they believed the surgery Plaintiff desired was required or necessary (versus elective).[7]  "[T]he naked assertion that Defendants considered cost in treating [Plaintiff's] hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011).  Plaintiff's argument either presupposes that surgery is the only treatment for hernias, an argument the Eleventh Circuit has already rejected, *Palazon,* 361 F. App'x at 89, or presupposes it was necessary (which he has no evidence to support).  Plaintiff's ability to establish the causation element of the corporate liability standard is further

---

[7] Plaintiff also points to *Copeland v. Jones*, Case No. 4:15cv452-RH-CAS (N.D. Fla. 2017), a suit brought by inmates also claiming such a custom or policy exists.  *Copeland* resulted in a settlement without an admission of liability by Corizon.  That case is not relevant here because no determination was made a custom or policy existed and the alleged facts regarding each plaintiff's medical needs and the treatment provided are different from the facts here, which show Plaintiff was provided with constitutionally adequate medical care for his particular medical needs.

undermined by Nurse Davis' undisputed testimony that she could have referred Plaintiff for surgery if she felt it was necessary.  ECF Doc. 144-1, p. 2.  Plaintiff's reliance on Drs. Ladele and Ortiz's consideration of a referral to a specialist also cuts against his argument as such a referral would not have been made if the doctors had ruled out surgery as an option because of the alleged Corizon custom or policy against same.  ECF Doc. 144-2, p. 20-21.  Accordingly, the undersigned finds that Corizon's motion for summary judgment should be granted.

> C.   Johnson, Lucante and May's Amended Motion for Summary Judgment

In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  In determining whether force was applied maliciously and sadistically to cause harm, a court considers: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)).

The Individual Defendants move for summary judgment on Plaintiff's Eighth Amendment claim on three grounds: (1) there's no genuine issue of material fact that excessive force was not used; (2) qualified immunity applies and (3) Plaintiff cannot recover where the injury is *de minimis*.  None of these arguments, however, warrant the entry of summary judgment in favor of the Individual Defendants.

First, as detailed in the recitation of the facts, the parties present conflicting versions of the events on January 11 and May 15 of 2014.  Taking Plaintiff's version as true, as the Court must do, the finder of fact could believe that, without justification, Johnson used excessive force on January 11, and Defendants did so on May 15 of 2014.  *See Reid v. Sec'y, Fla. Dep't of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012) ("[F]or purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in determining whether there is a genuine dispute of fact on a material issue in the case.").

Second, "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002).  A reasonable prison official would understand that striking or applying chemical agents to a prisoner without

justification would violate the Constitution.  Defendants, therefore, are not entitled to qualified immunity on Plaintiff's Eighth Amendment excessive force claim.

Third, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), which has been interpreted to require more than a *de minimis* injury for a plaintiff to recover either compensatory or punitive damages for constitutional violations, does not apply because Plaintiff was not in custody when he filed this suit.  *See* ECF Doc. 1; *See Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000) ("Because section 1997e(e) applies only to claims filed while an inmate is confined, it does not prevent a former prisoner from filing after release a monetary damages claim for mental and emotional injury suffered while confined, without a prior showing of physical injury.").  It also does not apply simply because Plaintiff is currently back in custody. *Harris*, 216 F.3d at 979-80 ("'[B]rought' and 'bring' refer to the filing or commencement of a lawsuit, not to its continuation.").  Moreover, there is a dispute of fact as to whether the physical injury was more than *de minimis*.  While Defendants rely on a photograph depicting a minor injury over Plaintiff's eye, Plaintiff contends that his hernia is a result of the alleged excessive force.

Although not specifically asserted as an independent cause of action, the Individual Defendants also seek summary judgment on Plaintiff's Fourteenth

Amendment claim, to the extent he is making one.[8]  In his complaint, Plaintiff claims "his right to equal protection was violated as all inmates [were] not treated with similar abuse, but many of those with similar (alleged) charges are."[9]  ECF Doc. 20, p. 13.  The Equal Protection Clause requires the government to treat similarly situated people in a similar manner.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "To establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race."  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)).  Plaintiff has not shown the Defendants' alleged treatment of him was based on a constitutionally protected interest.

The Supreme Court has recognized "class of one" equal protection claims where a plaintiff asserts that he was irrationally discriminated against on an individual basis, rather than as a member of a particular group.  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  A plaintiff can establish a "class of one" claim by showing that he was "intentionally treated differently from others

---

[8] It does not appear Plaintiff intended to bring an independent equal protection claim.  Instead, Plaintiff's response speculates that his conviction may have been what motivated Defendants' excessive use of force.  ECF Doc. 162, p. 22-25.  Because Defendants raised the issue in their motion, the undersigned has addressed it in an abundance of caution.

[9] Plaintiff was convicted for lewd or lascivious molestation of a minor.

similarly situated and that there is no rational basis for the difference in treatment." *Id*. at 564. "To be 'similarly situated,' the comparators must be prima facie identical in all relevant respects." *Grider v. City of Auburn*, Ala., 618 F.3d 1240, 1264 (11th Cir. 2010) (quotation and emphasis omitted). Plaintiff, however, has failed to identify any similarly situated individual who was treated differently from him. Thus, Defendants are entitled to summary judgment on this claim. *See Novak v. Cobb Cty.-Kennestone Hosp. Auth.*, 849 F. Supp. 1559, 1572 (N.D. Ga. 1994) ("In order for there to have been a violation of equal protection, there must be evidence that similarly situated persons were treated differently by the state.")

V. Conclusion

Accordingly, it is ORDERED:

1. Plaintiff's Motion for Leave to Exceed Page Limitation and Accept in its Current Form Plaintiff's Motion in Opposition to the Defendant Officers' Motion for Summary Judgment (ECF Doc. 161) is GRANTED. Plaintiff's response (ECF Doc. 162) to Defendants' Amended Motion for Summary Judgment is accepted as filed.

2. Plaintiff's Request for Entry of DVD-Video Evidence into the Summary Judgment Record (ECF Doc. 163) is DENIED.

3. Defendant Corizon's Motion to Strike Plaintiff's Response (ECF Doc. 169) is DENIED. Plaintiff's surreply (ECF Doc. 167) is accepted.

And it is respectfully RECOMMENDED:

1.    That Defendant Corizon's Motion for Summary Judgment (ECF Docs. 144, 145) be GRANTED.

2.    That Defendants' Johnson, Lucante and May's Amended Motion for Summary Judgment (ECF Doc. 156) be DENIED as to Plaintiff's Eighth Amendment claim and GRANTED as to Plaintiff's Fourteenth Amendment claim.

3.    That this matter be referred to the undersigned for further pretrial proceedings on Plaintiff's individual capacity Eighth Amendment excessive force claim against Defendants Johnson, Lucante and May.

At Pensacola, Florida, this 3rd day of May, 2019.


*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.